UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AGRICO CANADA LTD.,

       Plaintiff,

v.                      Case No.  8:08-cv-2132-T-33EAJ

HELM FERTILIZER CORP.,

       Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Helm Fertilizer Corp.'s Motion for Summary Judgment (Doc. # 38), which was filed on August 5, 2009. Plaintiff Agrico Canada LTD. filed a Response in Opposition to the Motion for Summary Judgment on August 31, 2009. (Doc. # 46). Also before the Court is Agrico's Motion for Partial Summary Judgment (Doc. # 44), which was filed on August 24, 2009. Helm filed a Response in Opposition to the Motion for Partial Summary Judgment on September 24, 2009. (Doc. # 50). For the reasons that follow, the Court grants Helm's Motion for Summary Judgment and denies Agrico's Motion for Partial Summary Judgment.

I.  **Background**

Agrico is a Canadian corporation that conducts business as an importer and wholesaler of bulk fertilizer products in Canada that are sold to dealers who, in turn, sell the

fertilizer products to farmers. (Doc. # 1 at ¶ 1). Helm is a citizen of the State of Florida with its office in Tampa, Florida. (Doc. # 6 at ¶ 2). Helm procures and sells bulk fertilizer products. (Doc. # 6 at ¶ 2).

On January 18, 2007, Agrico submitted a one-page Purchase Order, P.O. Number 13438, to Helm in Tampa, Florida concerning the purchase of 25,000 metric tons of granular urea (a fertilizer product) for a total cost of $8,825,000. (Doc. # 1 at ¶ 3; Doc. # 1 at 17). The Purchase Order was signed by Agrico's manager of supply and distribution, Tony Lok, and it included a requirement that the product be shipped to Agrico by April 25, 2007. (Doc. # 1 at 17).

On that same day, after receiving the Purchase Order, Helm drafted a Sales Contract for the fertilizer product. (Doc. # 1 at 19). The Sales Contract adopted some of the terms of the Purchase Order, but it rejected the requirement that the product be delivered to Agrico by April 25, 2007. Instead, the Sales Contract stated as to "Delivery Time" that "Seller to make best efforts for vessel to arrive [in] Montreal April 25 - May 10, 2007." (Doc. # 1 at 19).

Helm's director of domestic trading, Michael Mooseman explains:

In the fertilizer industry, sellers, including

2

Helm, customarily use date ranges rather than specific dates. Furthermore, in circumstances, where a sales contract does include a date range for delivery, as in this case, Helm does not guarantee delivery during that date range but instead undertakes to use its best efforts; and does not include in its sales contract any "time is of the essence" language. This is because Helm fully understands and appreciates that the exact date of actual delivery generally depends on a number of facts, many of which are not within the control of Helm.

(Doc. # 39-3 at ¶ 5).

Helm's expert, David Turner, provides some examples of why a delivery window, rather than a date certain contract, is preferable in contracts such as the one at issue:

It is very common industry practice in all bulk commodity transactions such as the one involved here for contracts to provide a window for delivery rather than a specific date because there are simply too many variables involved, particularly in transactions involving international shipping, for a seller to guarantee delivery on a date certain. . . . [V]ariables that have to be considered would be weather conditions, breakdowns, strikes, acts of God, Force Majeur incidents, stowaways, illness and port congestion to name but a few.

(Doc. # 52-2 at 8).

In addition to the best efforts window for the delivery of the product, the Sales Contract contained specific terms regarding amendment of the contract and the remedies available under the contract. Furthermore, the Sales Contract contained a merger clause and a statement of the applicable law

controlling the agreement. (Doc. # 1 at 20).

Specifically, the Sales Contract provided, "No amendment to this contract shall be valid unless it is in writing and signed by the party against whom enforcement is sought." (Doc. # 1 at 20 ¶ 10). The Sales Contract also contained an "Entire Agreement" clause, or merger clause, which specified:

> This form of contract, together with any riders, schedules, or exhibits hereto and other written materials incorporated by reference herein (but not including any purchase order, acknowledgment form or other document issued by Buyer unless expressly stated by Seller to form a part hereof) constitutes the entire agreement between the Seller and Buyer with respect to the purchase and sale described on the attached form. No price negotiations, representations, or understanding shall be considered to add to or modify the terms hereof.

(Doc. # 1 at ¶ 12).

Agrico contends that its employee, Mr. Lok, was concerned by the best efforts delivery window. Allegedly, Mr. Lok telephoned Mr. Mooseman, Helm's employee, objecting to the best efforts delivery window. (Doc. # 1 at ¶ 6).[1]  Agrico

---

[1] The only "evidence" filed by Agrico in support of its allegation that Mr. Mooseman promised delivery of the fertilizer on a date certain (April 25, 2007) is the unsworn statement of Mr. Lok. (Doc. # 44-7). The record also contains the deposition of Murray Martin, an Agrico employee, who testified that Mr. Mooseman promised that Helm would "look after" Agrico and that the fertilizer would arrive "on time." (Martin Dep. Doc. #39-2 at 63:13-24). Assuming that Mr. Mooseman made this statement to Mr. Martin, the statement is not a promise for a date certain of April 25, 2007, or any

alleges that Mr. Mooseman promised that, no matter what the contract said, Helm would deliver the product to Agrico by April 25, 2007. ( Doc. # 1 at ¶ 6).[2] Mr. Mooseman and Mr. Lok signed the Sales Contract.

Under the Sales Contract, Helm was responsible for procuring the tons of fertilizer product in Egypt and chartering a vessel to transport the product from Egypt to Agrico in Canada. (Doc. # 1 at ¶ 7).

In March 2007, Agrico contacted Helm seeking information concerning the progress of the fertilizer from Egypt. (Doc. # 1 at ¶ 9). Helm informed Agrico that Helm had not yet selected a vessel to ship the fertilizer from Egypt to Canada. (Doc. # 1 at ¶ 9). Helm described several vessels, and on April 2, 2007, Agrico agreed that the vessel M/V Ziemia Zemojska (hereafter, the "Ziemia Z" or the "vessel") would be acceptable. (Doc. # 1 at ¶¶ 12-14; Mooseman Aff. Doc. # 39-3 at ¶ 8). At the time Agrico agreed to the vessel, Agrico should have known that the vessel would not arrive in Canada on or before April 25, 2007. (Martin Dep. Doc. # 39-2 at 66:4-

_____

other date certain. This vague and noncommittal statement is of no consequence in this case.

[2] Helm denies that any of its agents promised delivery to Agrico by April 25, 2007.

25-70:1-25);(Mooseman Aff. Doc. # 39-3 at ¶ 8).

When Agrico's employees realized that there was no way
that the vessel could make it to Canada with the fertilizer by
April 25, 2007, Agrico's did not lodge an objection or
protest. (Martin Dep. Doc. # 39-2 at 82:7-22). Instead,
Martin "thanked" Helm "for getting a boat in there at that
point in time" and stated that Agrico "appreciated [Helm's]
efforts." (Martin Dep. Doc. # 39-2 at 66:13-17; 82:12-22).

Thereafter, Agrico repeatedly inquired of Helm as to the
status of the delivery of the fertilizer. Helm made several
communications by telephone and e-mail concerning the status
of the delivery. Loading of the vessel was completed on or
about April 23, 2007. (Doc. # 1 at ¶ 18). Even though the
Sales Contract's delivery best efforts delivery window was
between April 25, 2007, and May 10, 2007, the vessel did not
arrive at Contrecoeur Quebec, Canada until approximately 6:00
a.m. on May 11, 2007, and it did not arrive at Hamilton,
Canada until May 13, 2007. (Doc. # 1 at ¶ 19).

Agrico accepted and paid for the fertilizer without
incident. (Mooseman Aff. Doc. # 39-3 at ¶ 10). Thereafter, on
May 22, 2007, Mr. Lok, on behalf of Agrico, sent a letter to
Helm demanding "in excess of $595,000" for expenses Agrico
incurred "due to the extremely late arrival" of the vessel,

including costs associated with purchasing granular urea from other sources, trucking, and excess stevedoring. (Doc. # 44-4). Agrico employee, Mr. Martin, however, drafted a handwritten note to another Agrico employee stating "the real cost to us are a little over [$]300,000." (Doc. # 39-2 at 54).[3] Agrico asserts that it was damaged by the "untimely" delivery of the fertilizer.

Thus, Agrico filed a six-count complaint against Helm on April 30, 2008, alleging, "As a direct and proximate result of Helm's breach, Agrico was compelled to purchase other suitable fertilizer from Canadian and United States sources and arrange for the transportation of same in order to fulfil its responsibilities and obligations to its customers." (Doc. # 1 at ¶ 34). Agrico contends that it sustained over $700,000 in damages due to Helm's alleged breaches. (Doc. # 1 at ¶ 35). Agrico's complaint contains the following allegations: breach of maritime contract (I); negligently providing assurance under maritime contract (II); third party beneficiary contract under maritime law (III); breach of contract (IV); negligent assurance under Florida law and the Uniform Commercial Code

---

[3] The Court notes that there may be some discrepancy in these figures and others noted in this Order due to the conversion tables for United States and Canadian currency.

(V); and third party beneficiary contract under Florida law and the UCC (VI). (Doc. # 1).[4]

Helm filed its answer and affirmative defenses on June 3, 2008. (Doc. # 6). On August 5, 2009, Helm filed its Motion for Summary Judgment (Doc. # 38), and on August 24, 2009, Agrico filed its Motion for Partial Summary Judgment on Liability (Doc. # 44). Both Motions are ripe for the Court's review.

## II. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a

---

[4] The complaint was filed in this Court's Jacksonville Division; however, on October 22, 2008, then presiding District Judge, Henry Lee Adams, Jr., transferred the case to the Tampa Division. (Doc. # 18). Once transferred to the Tampa Division, the case was assigned to the undersigned District Judge. On March 2, 2009, the Court issued its Case Management and Scheduling Order setting this case for a bench trial during the January 2010 trial term. (Doc. # 21).

grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations
or evidence, the non-moving party's evidence is presumed to be
true and all reasonable inferences must be drawn in the non-
moving party's favor.  Shotz v. City of Plantation, Fla., 344
F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder
evaluating the evidence could draw more than one inference
from the facts, and if that inference introduces a genuine
issue of material fact, the court should not grant summary
judgment.  Samples ex rel. Samples v. City of Atlanta, 846
F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel
Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856
(11th Cir. 1988)).  However, if the non-movant's response
consists of nothing "more than a repetition of his
conclusional allegations," summary judgment is not only
proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034
(11th Cir. 1981).

III. **Analysis**

A.   **Choice of Law**

Before delving into the parties' summary judgment
arguments, the Court must determine the applicable law.  This
case involves a maritime contract.  As stated in Norfold S.
Railway Co. v. Kirby, 543 U.S. 14, 24 (2004), if the "primary
objective is to accomplish the transportation of goods by sea"

10

from one continent to another, the contract is maritime in nature. Id. The fact that an international maritime contract incorporates work to be done on land does not render it a non-maritime contract, so long as the sea component is substantial. Id. at 26-27.

Judge Adams explained in his October 22, 2008, Transfer Order:

> The present case involves a sales contract for the purchase of 25,000 metric tons of Granular Urea, but a material element of the relevant Sales Contact was to procure the use of an oceangoing vessel to load in Egypt, transit the St. Lawrence Seaway and discharge in Montreal and/or Hamilton, Ontario Canada . . . . Based on these allegations [], the contract here is a maritime contract because its sea components are substantial.

(Doc. # 18 at 2).

Counts I, II, and III of the complaint are maritime claims, and the Court's jurisdiction over these claims is based in admiralty jurisdiction. Counts IV, I, and VI are "mirror causes of action" under Florida law. (Doc. # 46 at 17). The Court has diversity jurisdiction over the Florida law claims. Further, "A federal court sitting in admiralty must apply federal maritime choice of law rules." Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009).

The Court's independent research revealed a plethora of cases addressing choice of law issues in maritime disputes.

11

However, a detailed choice of law discussion is not needed
here.  The parties' Sales Contract contained a clear choice of
law provision indicating that the contract "shall be
constructed  in accordance with the Uniform Commercial Code as
enacted in the State of Florida, United States of America."
(Doc. # 1 at 20).  The Eleventh Circuit gives effect to choice
of law provisions in maritime contracts.  See Cooper, 575 F.3d
at 1163 (enforcing a choice of law provision requiring that
the contract be governed by Dutch law).

In this case, the Court will honor the parties' choice of
law provision and apply the UCC under Florida law.

### B.   **Summary of the Arguments**

Agrico seeks an order granting it summary judgment on the
issue of liability only. Helm, on the other hand, seeks an
order granting it summary judgment as to each of Agrico's
claims.   After due consideration, the Court enters its
judgment in favor of Helm as to all counts of the Complaint
and denies Agrico's Motion for Partial Summary Judgment.

In support of its claim that Helm is liable for Agrico's
alleged injuries, Agrico presents a bounty of legal theories.
First, Agrico asserts that the best efforts delivery window
contained in the Sales Contact does not apply.  Specifically,
Agrico contends that the delivery date for the fertilizer as

12

agreed upon by the parties was April 25, 2007, not May 10, 2007, because the parties entered into a separate oral contract. In addition, Agrico contends that the parties participated in a "battle of the forms" between Agrico's Purchase Order and the Sales Contract, and Agrico's delivery requirement of April 25, 2007, was not effectively rejected by Helm.

Agrico also contends that Helm waived the requirement that all contract modifications be in a signed writing.

In the alternative to Agrico's theories that the written Sales Contract was modified, replaced by an oral contract, or otherwise inapplicable, Agrico argues that Helm breached the Sales Contract by failing to deliver the fertilizer by the last day of the delivery window: May 10, 2007.

In addition to its breach of contract theories, Agrico advances the theory that Helm made negligent "assurances" or misrepresentations to Agrico concerning the projected delivery date of the fertilizer. Agrico also argues that "Helm breached its duty to Agrico as a third party beneficiary of the Charter Party by failing to schedule, transport, load, sail and deliver the fertilizer in a timely manner." (Doc. # 44 at 22).

Helm, on the other hand, argues that summary judgment on liability in Agrico's favor is not appropriate because Helm's representatives never advised Mr. Lok that the fertilizer would arrive by April 25, 2007, and "Helm would not have accepted a purchase order based on such an absolute requirement." (Doc. # 50 at 4). Helm correctly argues that Mr. Lok's unsworn statement, the only "evidence" in support of the alleged promise of a date certain delivery, is not proper evidence for consideration on a summary judgment motion.[5]

Furthermore, Helm argues that the parties' written Sales Contract, including its integration clause, prevails, that there was never an oral contract, and that the parties never modified the written Sales Contract. Helm also argues that there are no third party beneficiary claims under the facts of this case and that Agrico's negligent misrepresentation claims are barred by the economic loss doctrine. Further, Helm argues that it used its best efforts to deliver the fertilizer within the best efforts delivery window. Helm contends that it substantially complied with the terms of the Sales Contract

---

[5] See West v. Higgins, 08-11309, 2009 U.S. App. LEXIS 21057, at *5 (11th Cir. Sept. 21, 2009)("Unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment.")(internal citations and quotation marks omitted).

because it tendered the first load of fertilizer within hours of May 10, 2007.

## 1. Sales Contract Issues

### a. Oral Contract and Oral Modification

The Court will now address Agrico's contentions that it had an oral contract with Helm that is separate and apart from the written Sales Contract and related argument that the parties orally modified the Sales Contract.

Agrico contends that it had a separate oral contract with Helm that provided that the fertilizer would be delivered to Agrico by Helm no later than April 25, 2007. Agrico acknowledges that the Sales Contract provides a delivery window of April 25 to May 11. Nevertheless, Agrico argues that Helm is bound by its separate, oral representations promising to have the fertilizer in Canada by April 25, 2007, at the latest.[6]

_____

[6] Agrico argues in its Motion for Partial Summary Judgment:

> [T]he conduct of the parties and continual communication between the parties during the pendency of this transaction [show that] Helm ultimately acceded to the wishes of Agrico to deliver the urea by April 25, 2007 and continued to give Agrico assurances that the April 25, 2007 date would be met, even though Helm knew or should have known that such assurances were misrepresentative of the facts in existence at the time. Even

Agrico argues that "the United States Supreme Court has recognized that 'it is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law.'" (Doc. # 44 at 11)(citing <u>Kossick v. United Fruit Co.</u>, 365 U.S. 731, 734 (1961)).

The Court does not quibble with the validity of certain oral contracts, on land or sea. However, in this case, Agrico has not provided the Court with any evidence to substantiate its arguments on this issue. The Court has not considered the unsworn statement of Mr. Lok, and such unsworn statement appears to be the only "evidence" Agrico has tendered to the Court on this issue. After an exhaustive review of the entire file, the Court finds that there is nothing in the record to contradict Mr. Mooseman's affidavit, in which he avers that he never promised delivery of the fertilizer to Agrico by a date certain. Specifically, Mr. Mooseman avers:

> Contrary to the allegations in Agrico's lawsuit, I never represented to Tony Lok or anyone else with Agrico on or about the contract date or at any

assuming *arguendo* that May 10, 2007 was the deadline, which Agrico denies, Helm nonetheless breached its obligation as it admits that it did not deliver the urea until May 11, 2007, and its actions therefore resulted in an absolute failure to perform.

(Doc. # 44 at 10).

other time that Helm would make sure the shipment
arrived by April 25, 2007 at the latest, and
neither Tony Lok nor any other Agrico
representative insisted that April 25, 2007 was an
absolute requirement. To the contrary, had Agrico
insisted on such an absolute guaranteed delivery
date, Helm would not have accepted its purchase
order.

(Doc. # 39-3 at ¶ 6).

Agrico's unsupported and conclusory allegations
concerning an oral contract or oral modification of the
contract do not create a genuine issue of material fact for
consideration by the trier of fact.

Even assuming, *arguendo*, that Agrico had a single piece
of valid evidence in support of its contentions that Helm
orally promised the fertilizer by a date certain, Agrico's
separate oral contract and oral modification theories must
fail. This is because the parties entered into a valid
written contract: the Sales Contract, concerning the delivery
of the fertilizer in question.

The Sales Contract contains an integration clause clearly
stating that the Sales Contract is the entire agreement "with
respect to the purchase and sale" of the fertilizer. (Doc. #
1 at 20). Any alleged oral conversations or representations
by Helm did not alter the written terms of the Sales Contract

and did not supercede or create an oral contract in place of the Sales Contract.

Further, the Sales Contract states, "No amendment of this contract shall be valid unless it is in writing and signed by the party against whom enforcement thereof is sought." (Doc. # 1 at 20). Agrico's arguments are fatally flawed because there are no signed writings that modify the Sales Contract with regard to the delivery date. In this case, the terms of written contract, including the best efforts delivery window, prevail and cannot be modified absent a signed writing. No further discussion is needed to dispense with Agrico's oral contract and oral modification theories.

**b.**    **<u>Waiver</u>**

Closely related to Agrico's oral modification argument is Agrico's contention that Helm waived the requirement that all modifications of the contract be substantiated by a signed writing. Agrico relies upon Florida Statute section 672.209 UCC "Modification, rescission, and waiver," which states:

> (1) An agreement modifying a contract within this chapter needs no consideration to be binding.
> (2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

18

(3)  The  requirements  of  the  statute  of  frauds
section  of  this  chapter  (s.  672.201)  must  be
satisfied  if  the  contract  as  modified  is  within  its
provisions.
(4)  **Although  an  attempt  at  modification  or
rescission  does  not  satisfy  the  requirements  of
subsection  (2)  or  (3)  it  can  operate  as  a  waiver.**
(5)  A  party  who  has  made  a  waiver  affecting  an
executory  portion  of  the  contract  may  retract  the
waiver  by  reasonable  notification  received  by  the
other  party  that  strict  performance  will  be
required  of  any  term  waived,  unless  the  retraction
would  be  unjust  in  view  of  a  material  change  of
position  in  reliance  on  the  waiver.

Florida  Statute  Section  672.209  (emphasis  added).

Agrico  argues  that  the  parties  modified  the  first

delivery  port  from  Montreal  to  Contracoeur  without  a  signed

writing,  thus  waiving  the  requirement  that  contract

modifications  be  in  writing.  However,  Helm  provides  evidence

that  it  did,  in  fact,  confirm  the  change  of  the  port  from

Montreal  to  Contracoeur  in  the  equivalent  of  a  signed  writing-

-an  e-mail  communication.[7]

---

[7] Helm  submits  that  pursuant  to  the  Electronic  Signatures
in  Global  and  National  Commerce  Act,  15  U.S.C.  §  7001(a)(1),
the  name  of  the  sender  on  an  e-mail  satisfies  the  requirements
of  a  signed  writing.  (Doc.  #  50  at  11).  See  Polyad  Co.  v.
Indopco,  Inc.,  06-c-5732,  2007  U.S.  Dist.  LEXIS  71925  at  *12
(N.D.  Ill.  Sept.  25,  2007)(citing  Cloud  Corp.  v.  Hasbro,  Inc.,
314  F.3d  289,  296  (7th  Cir.  2002)  ("Neither  common  law  nor  the
UCC  requires  a  handwritten  signature  and  the  sender's  name  on
an  e-mail  satisfies  the  signature  requirement  of  the  statute
of  frauds")).

In addition, Helm reasons that the two ports are very close to one another in location and that such change of the delivery port was a *de minimus* change (as compared with changing the delivery time from a best efforts delivery window to a date certain, which is an unquestionably major change).

The Court does not find that Helm waived the requirement that contract modifications be in writing simply because the parties agreed to change the first delivery port from Montreal to Contracoeur.[8]

### c.   <u>Battle of the Forms</u>

In the alternative to its oral contract, oral modification, and waiver arguments, Agrico attempts to avoid the best efforts delivery window by contending that this case presents a "battle of the forms" under the Uniform Commercial Code, as codified in § 672.207, Florida Statutes. Agrico argues that Helm accepted the terms of Agrico's Purchase Order, including the firm April 25, 2007 "date required" for delivery. (Doc. # 1 at 17). Agrico engages in a scholarly

_____

[8] Agrico also appears to contend that, if the parties did not actually succeed in orally modifying the Sales Contract, their discussions, including Helm's alleged assurances that the fertilizer would arrive by April 25, 2007, resulted in a waiver of the best efforts delivery window. The Court rejects this argument because Agrico has not provided the Court with any evidence to substantiate the argument that Helm orally promised to deliver the fertilizer on a date certain.

discussion of the battle of the forms; however, Agrico misses one key fact--that the parties entered into a written contract.

As correctly argued by Helm "there is no battle of the forms where both parties have signed an integrated contract." (Doc. # 50 at 9). <u>See</u> <u>Cajun Electric Power Cooperative, Inc.</u>, 791 F.2d 353, 362 n. 13 (5th Cir. 1986)("where both parties signed the same final contract, any 'battle of the forms' that might have been brewing was ended"); <u>McJunkin Corp. v. Mechanicals, Inc.</u>, 888 F.2d 481, 482 (6th Cir. 1989)(a battle of the forms arises when the parties fail to incorporate their agreement into a single signed contract).

Here, Agrico proposed a delivery date of April 25, 2007, in the Purchase Order and that term was plainly rejected by Helm.  The final contract, the Sales Contract, contained the best efforts delivery window, and both parties signed the Sales Contract.  There is no battle of the forms in this case because the parties integrated their agreement into a final written contract.

### d.    <u>Breach of Sales Contract as Written</u>

In the alternative to its arguments that the delivery date was actually April 25, 2007, Agrico contends that Helm breached the Sales Contract by delivering the fertilizer on

May 11, 2007, hours after the expiration of best efforts delivery window. Agrico argues that Helm's tender of the fertilizer after May 10, 2007, resulted in an "absolute failure to perform." (Doc. # 44 at 10). In addition, Agrico asserts that "best efforts" clauses in contracts such as the present one have no legal meaning, and thus, Helm was in breach when it failed to deliver on or before May 10, 2007.

The Court disagrees with Agrico's arguments on this point. Helm submitted the aforementioned expert report of Turner, submitted under penalty of perjury, that "Helm contractually undertook to use its best efforts to deliver the subject cargo to the first destination port in Canada between April 25 and May 10, 2007." (Doc. # 52-2 at 8). In support of this conclusion, Turner explains:

> [Helm] endeavored to deliver the cargo as early in that delivery window as possible. Among other things, [Helm] nominated a ghost vessel (an acceptable industry practice) to facilitate an early arrival of the vessel at the departure port, and after departure it pressed the vessel to increase its speed. Helm also appropriately kept Agrico advised of the status of the shipment. I note that the subject vessel arrived at the departure port during the April 5 to April 10 2007 "laycan" period clearly specified when the vessel was nominated and accepted by Agrico in writing. Furthermore, as a result of these unforeseen delays at the ports, despite best efforts by Helm, Helm was obligated to pay a substantial sum of money as demurrage.

(Doc. # 52-2 at 8-9).

Turner further opined, "If Agrico wanted fertilizer by April 25, it should have provided for a far earlier window to provide an ample cushion, particularly since it would have been necessary for Agrico to deliver the product to its distributors who would in turn have to deliver the fertilizer to their end-users, the farmers, who would have wanted the fertilizer delivered well before the commencement of planting." (Doc. # 52-2 at 9).

Turner's expert report is consistent with the report furnished by Helm's second expert: Tom Sawyer. Among other things, Sawyer opined, "Based on my experience with marine transport of fertilizer, the planning and execution are normally filled with trials and tribulations. According to Mr. Mooseman's affidavit, Helm did exert its best efforts for the vessel to arrive at the first delivery port April 25-May 10, 2007." (Doc. # 52-2 at 14).

Although Agrico submitted four expert reports, Agrico's experts do not refute Helm's experts' opinions, and Agrico's experts fail to create a genuine issue of material fact as to Helm's best efforts and performance under the contract.

Agrico's first two experts, Stephen C. Redmond and Dr. Bill Deen, provide lengthy discussion of Canada's limited

growing season. These reports have no bearing on this case. It was Agrico's responsibility to its customers to enter into a contract for the timely delivery of fertilizer to Canada based on Canada's growing season-not Helm's responsibility. It may very well be that the fertilizer in question was delivered after the Canadian planting season, but that is Agrico's problem, not Helm's.

Agrico's final experts, Jack Berg and John F. Ring, provide germane opinions. However, the opinions of Berg and Ring-that Helm did not use best efforts to timely deliver the fertilizer-are based on the incorrect assumption that the contract required delivery of the fertilizer by April 25, 2007. Berg opines, "It is my opinion that Helm breached the Sales Contract by failing to meet the April 25th delivery date that it orally represented to Agrico when Agrico reluctantly agreed to sign the Sales Contract." (Doc. # 44-12 at 5). Similarly, Ring opines, "Helm knew the imperative of April 25, 2007 arrival of the cargo in Montreal." (Doc. # 44-22 at 3).

The Court determined earlier in this Order that the best efforts delivery window of April 25-May 10, 2007 applied. Accordingly, the Court determines that Helm used its best efforts to comply with the Sales Contract and did not breach

the Sales Contract by delivering the fertilizer on the morning of May 11, 2007.

Even assuming *arguendo* that Helm breached the Sales Contract by failing to use best efforts and by delivering the fertilizer after May 10, 2007, the Court finds that Agrico suffered no damages as a result of the breach.

Agrico's representative, Mr. Martin, admitted during his July 14, 2009, deposition that Agrico did not sustain any damages due to Helm's delivery of the fertilizer at 6:00 a.m. on May 11, 2007, rather than by May 10, 2007. (Doc. # 39-2 at 59-60). During the deposition, counsel for Helm asked Martin: "Did Agrico incur any additional damage, other than what it's already contends, due to the fact that the vessel, rather than arriving on May 10, arrived on the morning of May 11?" (Martin Dep. Doc. # 39-2 at 59:15-18). Martin responded: "Make sure I understand the question right. So by six hours, would it have changed our damages. . . . **No, sir, it would not.**" (Martin Dep. Doc. # 39-2 at 59:19-22)(emphasis added).

Helm is thus entitled to summary judgment on Counts I and IV of Agrico complaint, alleging breach of contract.

## 2.    <u>Negligent Assurances</u>

Agrico alleges that Helm "during the entire course of conduct of the parties from the purchase order and

subsequently" advised Agrico that "the relevant product deliver[y] date would be met." (Doc. # 1 at ¶ 37). Further, Agrico alleges, that "Helm had a duty to accurately and timely respond to Agrico by disclosing all pertinent information regarding the availability of urea in Egypt as well as the availability of and scheduling of vessels. (Doc. # 1 at ¶ 58).

Agrico's complaint contains two counts for "negligent assurance" but Agrico's Motion for Partial Summary Judgment focuses on the elements of "negligent misrepresentation." (Doc. # 44 at 19). The Court will assume that Agrico uses these terms interchangeably. To prove negligent misrepresentation, it must be shown:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

Baggett v. Electricians Local 915 Credit Union, 620 So.2d 784, 786 (Fla 2d DCA 1993).

Agrico asserts in its Motion for Partial Summary Judgment that "Helm negligently gave assurance to Agrico that a vessel would be nominated and loaded in a timely manner." (Doc. # 44 at 19). Agrico has not provided evidence to the Court that

26

Helm misrepresented material facts to Agrico. Agrico's expert, Ring, provides some commentary on this issue, but his opinion is fatally flawed because it is premised on a firm delivery date of April 25, 2007.[9] It also appears that both Ring and Berg strongly relied on Mr. Lok's unsworn statement.

Mr. Mooseman's affidavit indicates:

> [T]he undersigned communicated with Mr. Lok and Agrico by e-mail and telephone on a number of occasions. Particularly, as the delivery date range approached, the undersigned kept Mr. Lok and Agrico apprised of the relevant information that the undersigned received. . . . Helm conveyed material information regarding the status of the shipment available to it. Helm did not convey information which it knew or had reason to know was inaccurate, incomplete and/or inadequate.

(Doc. # 39-3 at ¶ 7).

Further, as discussed by Mr. Mooseman in his uncontroverted affidavit, the record reflects that when Agrico accepted the Ziemia Z, Agrico should have known that the

---

[9] Ring opined, "Helm failed to keep Agrico advised of their progress in locating a suitable vessel until late March when Mr. Lok pressed Mr. Mooseman of Helm inquiring about Helm's nomination of a performing vessel. Mr. Mooseman advised Agrico for the first time since signing the Sales Contract (some six weeks previously) that Helm was unable to find a suitable vessel, and therefore none had been fixed. Mr. Lok became alarmed and again reminded Mr. Mooseman that it was absolutely imperative that the performing vessel and its cargo arrive at Montreal by latest April 25th and at Hamilton by latest May 1st. Again, as he had in the past, Mr. Mooseman assured Mr. Lok, that Helm would have a vessel at Montreal by latest April 25th." (Doc. # 44-22 at 2).

vessel could potentially arrive in Canada as late as early May 2007– a date that is later than the April 25, 2007, date that Agrico claims to have demanded.[10]

Thus, the Court finds that Agrico failed to substantiate its assertion that Helm made a misrepresentation. The Court also finds that Agrico cannot claim any justifiable reliance, even if there was a misrepresentation about the delivery date. See Schubot v. McDonalds Corp., 757 F.Supp. 1351, 1357 (S.D. Fla. 1990), aff'd 963 F.2d 385 (11th Cir. 1992). In Schubot, the court determined that a plaintiff's reliance on an oral statement is unreasonable if the defendant expressly refused to include a similar provision in the contract that was executed by the parties. Id. at 757 F.Supp. at 1356.

Here, it is undisputed that Helm refused to include a date certain delivery date of April 25, 2007 (or any other certain date for that matter) in the Sales Contract, and

_____

[10] Mr. Mooseman explains, "Mr. Lok and Agrico were advised of a "LAY/CAN" of April 5-10, 2007, meaning that the Ziemia Z could be at the loading port as late as April 10 and would ordinarily berth and commence loading within or shortly after the referenced date range. Based on his experience and publically available information, and as confirmed during my communications with Mr. Lok, Mr. Lok knew that it would take four to five days to load the Ziemia Z, and that the transit time to arrive at the first discharge port would be approximately sixteen to seventeen days, all assuming no subsequent delays or scheduling changes." (Mooseman Aff. Doc. # 39-3 at ¶ 8).

Agrico executed the contract knowing that the date certain delivery date was not included in the Sales Contract. The court came to the same conclusion in <u>Hazara Enter., Inc. v. Motiva Enter., LLC</u>, 126 F.Supp.2d 1365, 1374 (S.D. Fla. 2000)(granting defendant's motion for summary judgment because it was unreasonable as a matter of law for a party to rely on an alleged false representation where a subsequent executed written contract does not contain the alleged misrepresentation).

This Court agrees with Helm's analysis that Agrico "had no right to rely on an assurance which was directly contradicted by the clear and unambiguous delivery term included in the contract executed by both parties. . . . Agrico's position, if adopted, would absolutely undermine the efficacy of written contracts." (Doc. # 38 at 14).

This Court finds that it is unnecessary to address the parties' arguments concerning the application of the economic loss rule because Agrico has not substantiated its negligent "assurance" or misrepresentation claims in this breach of contract case. Thus, Helm is entitled to summary judgment as to Counts II and V of Agrico's complaint.

### 3. <u>Third-Party Beneficiary</u>

Agrico's final argument is that Helm breached the contract known as the "Charter Party" to which Agrico was an alleged third-party beneficiary. The Court can quickly resolve Agrico's third-party beneficiary claims.

The Court has reviewed the Charter Party and determines that such Charter Party was a contract between the ship owner, Polish Steam Ship Company, Ltd., and the charterer, Helm Duengemittel GMBH. (Doc. # 44-8). Agrico conflates the Defendant in this case, Helm Fertilizer Corp., a Florida Corporation, and the charterer Helm Duengemittel GMBH. This is improper. The Affidavit of Dale Miller, president of Helm Fertilizer Corporation, demonstrates that the sole Defendant in this action (Helm Fertilizer Corporation) is not the same entity that entered into the Charter Party with Polish Steam Ship Company, Ltd. Mr. Miller indicates:

> Helm Fertilizer Corporation is owned by Helm America Corporation which also owns several other subsidiaries. Helm America Corporation is a subsidiary of Helm AG, a German company. Helm AG has an additional subsidiary, Helm Dungemittel GMBH. Helm Dungemittel GMBH is the entity which entered into a charter party for the chartering of the vessel involved in the litigation between Helm Fertilizer Corporation and Agrico Canada, Ltd. Helm Fertilizer Corporation is a separate and distinct entity from Helm Dungemittel GMBH.

(Miller Aff. Doc. # 45-2 at 1, ¶ 3-4).

Under a third-party beneficiary theory, the plaintiff must sue the allegedly breaching party to the contract under which the plaintiff is a third-party beneficiary. In Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 683 (2003), the Court generally explained, "In contract law, a third party to the contract . . . may only sue for breach if he is the 'intended beneficiary' of the contract. A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty")(internal citation and quotation marks omitted).[11]

Here, Agrico has not sued either party to the Charter Party. Further, even assuming *arguendo* that Helm Fertilizer, the Defendant in this case, is a proper defendant for Agrico's third-party beneficiary action, Agrico has not identified a provision of the Charter Party which Agrico contends Helm breached.

Thus, Helm is entitled to summary judgment on Agrico's complaint counts asserting third-party beneficiary status (Counts III and VI).

Accordingly, it is hereby

---

[11] Further, the Charter Party does not contain language designating Agrico as a third party beneficiary.

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Helm Fertilizer Corp.'s Motion for Summary Judgment (Doc. # 38) is **GRANTED.**

(2) Agrico's Motion for Partial Summary Judgment (Doc. # 44) is **DENIED**.

(3) The Clerk is directed to enter **JUDGMENT** in favor of Defendant Helm Fertilizer Corp. and thereafter to **CLOSE THE CASE.**

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of December 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record